**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| **CRAIG BUTTERFIELD,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | **Case No.** |
| **UNITED PARCEL SERVICE, INC., and TEAMSTERS LOCAL 493,** | : | |
| **Defendants.** | : | |

**DEFENDANT UNITED PARCEL SERVICE, INC.'S NOTICE OF REMOVAL**

Defendant United Parcel Service, Inc. (hereinafter "UPS"), by and through its undersigned counsel and pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, hereby gives notice of the removal of the above-styled action to this Court. In support of its Notice of Removal, UPS states as follows:

## I.    INTRODUCTION

1.      Plaintiff Craig Butterfield ("Butterfield" or "Plaintiff") filed this action on March 20, 2026, in the Superior Court Judicial District of New London, Connecticut, captioned as *Craig Butterfield v. United Parcel Service, Inc. and Teamsters Local 493*, Civil Action No. KNL-CV26-6082735-S (the "State Court Action").

2.      UPS was served with, and actually received, copies of the State Court Action on April 23, 2026, within thirty (30) days of the filing of this Notice of Removal.

3.      True and accurate copies of all process, pleadings, and orders served, filed, or entered in the State Court Action as of the date of the filing of this Notice of Removal are attached hereto as **Exhibit A.**

1

4.    While UPS contends that the allegations in Plaintiff's Complaint lack merit, Plaintiff's Complaint seeks damages for alleged breach of contract and fraudulent misrepresentation, presumably under Connecticut state law.

## II.    REMOVAL PROCEDURES AND VENUE

5.    UPS' Notice of Removal is timely filed under 28 U.S.C. § 1446(b). Specifically, UPS' Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) since this removal was filed within thirty (30) days of service of the Complaint on Defendant UPS.

6.    In accordance with 28 U.S.C. § 1446(d), UPS will promptly provide written notice of the filing of this Notice of Removal to Plaintiff.

7.    Pursuant to 28 U.S.C. § 1446(d), UPS will promptly file a duplicate copy of this Notice with the Clerk of the Superior Court Judicial District of New London, Connecticut.

8.    In accordance with 28 U.S.C. § 1446(a), venue is properly placed in the United States District Court for the District of Connecticut because it is the district court for the district and division where the State Court Action is pending (Superior Court Judicial District of New London, Connecticut).

9.    Further, this action is not an action made non-removable by 28 U.S.C. § 1445(c).

10.    Pursuant to 28 U.S.C. 1446(b)(2), counsel for co-Defendant Teamsters Union Local No. 493 has been provided a copy of this Notice of Removal and consents to this filing.

## III.    FEDERAL QUESTION JURISDICTION

### A.    THE COMPLETE PREEMPTION DOCTRINE

11.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(a), as this is a civil action arising under the Constitution, laws, and/or treaties of the United States.

2

12.    "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

13.    However, as the Second Circuit Court of Appeals has explicitly recognized, "[t]he complete preemption doctrine is an exception to the well-pleaded complaint rule." *Id.* (citing *Caterpillar*, 482 U.S. at 393). "Complete preemption occurs when the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (quoting *Caterpillar*, 482 U.S. at 393); *see also Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005) (observing that "[w]hen a plaintiff raises . . . a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law," and as such the "artful pleading doctrine allows removal") (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)).

14.    The Supreme Court has identified three federal statutes to have the "requisite extraordinary preemptive force to support complete preemption," including in particular § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 ("LMRA"), which "governs the employer's duty to honor . . . collective bargaining agreement[s]." *Sullivan*, 424 F.3d at 272; *White v. White Rose Food*, 128 F.3d 110, 113 (2d Cir. 1997). "Section 301 preemption serves to 'ensure uniform interpretation of collective-bargaining agreements' . . . [and] governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Id.* (quoting *Lingle v. Norge Div. of*

3

*Magic Chef, Inc.*, 486 U.S. 399, 404 (1988), and *Caterpillar*, 482 U.S. at 394); *see also In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 380 (S.D.N.Y. 2024). The Supreme Court has also held that state-law claims are subject to § 301 preemption where resolution of the rights and obligations established under those claims "do not exist independently of private agreements." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

**B.    SECTION 301 OF THE LABOR-MANAGEMENT RELATIONS ACT ("LMRA")**

15.    Section 301 of the LMRA creates federal question jurisdiction over lawsuits alleging violations of a contract between an employer and a labor organization. *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003); 29 U.S.C. § 185. According to the Supreme Court, § 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Bish v. Aquarion Servs. Co.*, 289 F. Supp. 2d 134, 147 (D. Conn. 2003) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)).

16.    There are two types of § 301 claims. The first is a "pure" § 301 claim, in which the plaintiff "simply alleges that the employer breached the CBA," which requires the party to "exhaust the grievance process required by the CBA." *Allen v. UPS*, 988 F. Supp. 2d 293, 298 (E.D.N.Y. 2013)  (citing *Vaca v. Sipes*, 386 U.S. 171, 184 (1967), and *Semper v. New York Methodist Hosp.*, 786 F Supp. 2d 566, 585 (E.D.N.Y. 2011)). The second is a "hybrid" § 301 claim, in which the employee brings suit against the employer and his union, alleging that the former "breached the CBA and the [latter] breached its duty of fair representation" under the related National Labor Relations Act ("NLRA"). *Carrion v. Enterprise Ass'n*, 227 F.3d 29, 33 (2d Cir. 2000).

17.    Plaintiff is a member of the International Brotherhood of Teamsters ("IBT") and the terms and conditions of his employment, including seniority, accommodation and leave

4

procedures, and job placement, are governed by collective bargaining agreements.  (**Exhibit B**, Complaint, at ¶¶ 3, 7, 14–16); *see also* UPS' 2013–2018, 2018–2023, and 2023–2028 National Master Agreements with the IBT ("Agreement") and its 2013–2018, 2018–2023, and 2023–2028 New England Supplemental Agreements with the IBT ("Supplemental Agreement") (together, the "CBA"), copies of which are attached hereto as **Exhibit C**.  Plaintiff's membership in the IBT and his assertions pertaining to seniority and job assignments implicate the CBA.

18.    As Plaintiff alleges, on or before April 11, 2017, Plaintiff and Defendants entered into an accommodation agreement ("Accommodation Agreement") that addressed Plaintiff's transition from full-time to part-time work as part of his accommodation.  (**Exhibit B** at ¶¶ 9–11; **Exhibit D**, Accommodation Agreement.)

19.    Plaintiff alleges that the Accommodation Agreement provides that, "Upon resuming work to [the Package Car Driver] position[, the employee] will revert back to full time status with the *appropriate seniority date*."  (*Id.* at ¶ 12 (emphasis added).).  Plaintiff further alleges that Defendants' employees also informed him that, upon returning to full-time, "he will revert back to seniority based on this 2006 start date."  (*Id.* at ¶ 13.)

20.    Plaintiff further contends that, on or about September 2025, Defendants "breached the contract by refusing to allow [him] to bid on a full time air driver job based on his 2006 seniority, and continue to do so."  (*Id.* at ¶¶ 14–15.)

21.    As a result of this alleged breach, Plaintiff claims that he has suffered various CBA-related injuries, namely that he has: "been denied his appropriate seniority"; "has lost the ability to bid on certain jobs"; "lost a certain job that he wanted in about the fall of 2025"; "has lost wages"; and "has incurred, and will incur attorneys' fees and costs of litigation."  (*Id.* at ¶ 16.)

Plaintiff also claims that Defendants' representations, and eventual denial of his seniority, constitute "fraudulent misrepresentation." (*Id.* at ¶¶ 16–19.)

22.     This case clearly presents a hybrid § 301 claim against both UPS and the IBT. Although the entire bargaining unit is covered and bound by the CBA negotiated on its behalf, individual employees are not signatories to it—only the IBT and UPS are. (*See* **Exhibit C**, Article 1.)  As an individual employee, Plaintiff has standing to enforce the CBA in only two limited circumstances: (1) to seek judicial review of the outcome of grievance-arbitration, provided that he exhausted any grievance-arbitration remedies provided in the CBA; or (2) as a hybrid § 301 claim (*see Vaca*, 386 U.S. 171) against both the IBT and UPS.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–64 (1983).  Because he does not allege that he challenges the outcome of any grievance procedure, Plaintiff only has standing to sue to enforce the CBA as a hybrid § 301 claim against both the IBT and UPS where the IBT acted in a discriminatory or arbitrary fashion, or in bad faith, so as to breach its duty of fair representation.  *Walsh v. IBEW Local 503*, 62 F. Supp. 3d 300, 303 (S.D.N.Y. 2014) (citing *Vaca*, 386 U.S. at 190).  Breach of the CBA pleaded in any other way by an individual employee is preempted by § 301.

23.     Here, Plaintiff's Complaint, while ostensibly pleaded as a breach of contract claim for breach of the Accommodation Agreement and a related fraudulent misrepresentation claim, is at its core a restyled assertion that UPS breached the *CBA* by denying him his seniority to which he believes he is entitled, including the ability to bid and obtain certain jobs.  Specifically, Plaintiff's claim about seniority implicates the seniority list and job assignment functions as outlined in the CBA, and thus is inextricably intertwined with consideration of the terms of the CBA.  (*See* **Exhibit C**, Articles 14, 57.)   Additionally, Plaintiff's claim that Defendants "fraudulently misrepresented" to him the operation and effect of his seniority under the CBA

following the execution of the Accommodation Agreement is "subsumed by the duty" of fair representation under the NLRA because the IBT's alleged conduct, "if ultimately proven, would violate this already-existing duty." *Walsh*, 62 F. Supp. 3d at 303 (citing *Vaca*, 386 U.S. at 190).

24.    Plaintiff therefore brings hybrid § 301 claims alleging that UPS and the IBT deprived him of his rights and benefits established under the CBA.  (**Exhibit B**, at ¶¶ 14–19.) Hybrid § 301 claims present a federal question and subsequently invoke this Court's subject matter jurisdiction. *See Domnister v. Exclusive Ambulette, Inc.*, 2007 U.S. Dist. LEXIS 87834, at *36 (E.D.N.Y. Nov. 27, 2007); *Allis-Chalmers Corp*, 471 U.S. at 220.

25.    Thus, this State Court Action is removable pursuant to 28 U.S.C. § 1441(a) because it is within the original jurisdiction of this Court under 28 U.S.C. § 1331 in that it involves a claim arising under the laws of the United States, namely the LMRA and the NLRA.

26.    By virtue of this Notice of Removal, UPS does not waive its right to assert any claims or defenses or to make other motions related to Plaintiff's claims.

WHEREFORE, UPS respectfully requests that this action be removed to the United States District Court for the District of Connecticut, and the Superior Court Judicial District of New London, Connecticut, proceed no further with respect to this action.

Date: May 11, 2026

Respectfully submitted,

*/s/ Javier F. Flores*
Javier F. Flores, Esq.
DINSMORE & SHOHL, LLP
101 Arch Street, Suite 1800
Boston, MA 02110
T: (857) 305-6383
F: (857) 305-6401
JAVIER.FLORES@DINSMORE.COM

*Attorney for Defendant United Parcel Service, Inc.*

7

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Notice of Removal* has been filed this 11th day of May 2026 with the Clerk of the Court using the CM/ECF filing system, and sent the same via electronic mail to the following counsel:

Peter J. Bartinik, Jr.
Commissioner of the Superior Court
The Bartinik Law Firm LLC
45 Pequot Court
Pawcatuck, CT 06379
P: 860-445-8521
F: 860-445-5873
E: peterjr@grotonlaw.com

*Attorney for Plaintiff*

David Robert Cheverie
333 East River Drive, Suite 101
East Hartford, CT 06108
P: 860-944-7803
F: 860-290-9611
E: dcheverie@cheverielaw.com

*Attorney for Defendant Teamsters Local 493*

/s/ Javier F. Flores
Javier F. Flores, Esq.

*Attorney for Defendant United Parcel Service, Inc.*

8